**Allen R. CORNELIUS, Jr., Plaintiff-Appellant,**

v.

**Cletus W. McWILLIAMS, Executive Secretary to the Supreme Court of Tennessee and William Sansom, Commissioner of Finance and Administration for the State of Tennessee, Defendants-Appellees.**

Court of Appeals of Tennessee, Nashville.

Aug. 6, 1982.

Application for Permission to Appeal Denied by Supreme Court Oct. 25, 1982.

Douglas Fisher, Nashville, for plaintiff-appellant.

Maclin P. Davis, Jr., Nashville, for defendants-appellees.

MATHERNE, Judge.

This is an action for declaratory judgment wherein the plaintiff, an associate judge on the Court of Criminal Appeals of Tennessee, seeks a declaration that the five percent limitation on judges annual salary adjustments set forth at T.C.A. § 8–23–103(d) is unconstitutional and that he is entitled to back pay. The chancellor held that the statute was not unconstitutional as applied to the plaintiff and dismissed the lawsuit. The plaintiff appeals.

I. *The Facts and The Issues*

In 1971 the legislature enacted a salary schedule for state judges for the eight-year judicial term beginning on September 1, 1974, and ending on August 31, 1982. That statute, codified as T.C.A. § 8–23–103(b) [1980 Supplement], established the base salary of the judges of the various courts, and further provided for an annual adjustment of judges' salaries, as follows:

Beginning September 1, 1974 the compensation of judges and chancellors shall be the base salaries fixed in this law adjusted to reflect the percentage of change in the per capita personal income of the state of Tennessee, as defined and published by the United States department of commerce, between that of the calendar year 1970 and the calendar year next preceding September 1 of the year for which the salaries are to be paid. The adjustment shall occur on September 1, 1974.

Thereafter, in March of 1974 and before the 1974–82 term began, the legislature amended the law establishing annual salary adjustments to judicial salaries for that term to provide:

(c) On July 1, 1975, the base salaries provided in this section, as adjusted, shall be adjusted to reflect the percent of change in the average consumer price index (all items-city average) as published by the United States department of labor, bureau of labor statistics between that figure for the calendar year 1974 and the calendar year 1973. Each succeeding July 1, a similar adjustment shall be made, based on the percent of change in the average consumer price index between the two (2) calendar years preceding July 1 of the year in which the adjustment is made. However, no reduction shall be made by way of adjustment on account of any decrease in the average consumer price index between two (2) successive calendar years. No adjustment based on the percent of change in the state's per capita personal income from year to year shall be made after September 1, 1974.

That statute is codified as T.C.A. § 8–23–103(c), and was in effect at the beginning of the 1974–82 judicial term.

In 1977, during the 1974–82 judicial term, the legislature in an attempt to limit and terminate the annual salary adjustments as allowed judges under subsection (c), enacted a statute, Chapter 44 of the Public Acts of 1977, section 3 of which is codified as T.C.A. § 8–23–103(d). That statute provides that:

(d) No annual salary adjustment as provided by this section shall be made after July 1, 1982. No annual salary adjustment made as provided by this section shall exceed five percent (5%). [Effective April 7, 1977]

The second sentence of subsection (d) is the statute in controversy wherein it was applied to Judge Cornelius who took office on October 2, 1978, after the enactment of the statute but during the judicial term in which it became effective. Whereas, those judges who took office prior to April 7, 1977, were allowed the annual adjustment of their base salaries as set out in subsection (c) of 8–23–103.

At this point we deem it appropriate to set out the following Stipulation of the parties:

## STIPULATION

It is STIPULATED by the parties as follows:

1. Plaintiff, Allen R. Cornelius, Jr., is an Associate Judge of the Court of Criminal Appeals of Tennessee, and has been since October 2, 1978. On October 2, 1978, plaintiff was appointed by the Governor of Tennessee, pursuant to T.C.A. § 17–1–301, to fill a vacancy in the office of Associate Judge on the Court of Criminal Appeals. Plaintiff served in said office under said appointment until September 1, 1980. Since September 1, 1980, plaintiff has served in said office of Associate Judge on the Court of Criminal Appeals as a result of having been elected in August of 1980 to serve the balance of the term of his predecessor which expires September 1, 1982.

2. Defendant, Cletus W. McWilliams, is Executive Secretary to the Supreme Court of Tennessee. Under T.C.A. § 16–3–803(c), said defendant is charged with the duty of administering the accounts of the judicial branch of government of the State of Tennessee.

3. Defendant, William Sansom, is Commissioner of Finance and Administration for the State of Tennessee. Under T.C.A. § 9–7–101, said defendant is charged with the duty of authorizing disbursements from the state treasury, including disbursements for the payment of salaries to Associate Judges on the Court of Criminal Appeals. Under T.C.A. § 8–23–104, said salaries are to be paid by said defendant monthly out of the state treasury.

4. On April 7, 1977, Chapter 44 of the Public Acts of 1977 of the State of Tennessee became effective. Section 3 of said Chapter 44 amended T.C.A. § 8–2303 and is now codified as T.C.A. § 8–23–103(d).

5. On May 20, 1977, the Attorney-General's office issued an opinion concerning the 5% annual limitation of Judges' salaries contained in Section 3 of Chapter 44 of the Public Acts of 1977. A true copy of this opinion is attached hereto as Exhibit A.

6. For the period of one fiscal year following the passage of Chapter 44 of the Public Acts of 1977, between July 1, 1977 and June 30, 1978, all judges, including newly-appointed judges were paid without regard to the 1977 Act by the defendants or their predecessors in office.

7. On July 12, 1978, the Attorney-General's office issued an opinion concerning the 5% annual limitation on judges' salaries contained in Section 3 of Chapter 44 of the Public Acts of 1977. A true copy of this opinion is attached hereto as Exhibit B.

8. Since July 1, 1978, plaintiff's annual salary adjustments have been limited to 5%.

9. Defendants have not limited to 5% the annual salary adjustments of the Associate Judges of the Court of Criminal Appeals appointed or elected to such offices prior to April 7, 1977. Defendants have caused to be paid to such Judges appointed or elected before April 7, 1977, salary adjustments equal to the percentage of change in the average consumer price index as published by the United States Department of Labor between the two calendar years preceding July 1 of the year in which the adjustment was made, which were as follows: 5.8% in 1977; 6.5% in 1978; 7.7% in 1979; 11.3% in 1980; and 13.5% in 1981.

10. Associate Judges of the Court of Criminal Appeals appointed or elected to office after April 7, 1977, perform the

same judicial duties as are performed by those Associate Judges appointed or elected to the Court of Criminal Appeals prior to April 7, 1977.

11. As a consequence of defendants' application of said 5% limitation on annual salary adjustments as provided in T.C.A. § 8–23–103(d) only to those Judges appointed or elected after April 7, 1977, plaintiff has received less compensation for performance of his judicial duties than the compensation received by those Associate Judges of the Court of Criminal Appeals appointed or elected before April 7, 1977. In 1978–79, plaintiff was paid $519.66 less than he would have been paid had not the annual salary adjustments of judges appointed or elected after April 7, 1977 been limited to 5%; in 1979–80, $2,055.77 less; in 1980–81, $5,496.48 less; in 1981–82, unless the 5% limitation is struck down, plaintiff will receive $10,783.73 less than he would have received had not his annual salary adjustment been limited to 5%. The chart included as Appendix 7 accurately reflects the compensation paid Tennessee judges for the dates indicated and accurately states the difference in compensation paid to those Judges appointed or elected before April 7, 1977 and those Judges appointed or elected after April 7, 1977.

12. This Stipulation shall be filed in this cause and shall be considered as conclusively establishing all facts set forth in this Stipulation.

The plaintiff argues that subsection (d) of 8–23–103 contravenes article 6, section 7 of the Constitution of Tennessee, which provides that:

Compensation of Judges.—The Judges of the Supreme Court or Inferior Courts, shall at stated times, receive a compensation for their services, to be ascertained by law, which shall not be increased or diminished during the time for which they are elected. They shall not be allowed any fees or perquisites of office nor hold any other office of trust or profit under this State or the United States.

The plaintiff also insists that the statute as applied to him is unconstitutional in that it denies him equal protection of the laws in contravention of article 1, section 8 of the state constitution and of the Fourteenth Amendment to the federal constitution.

The chancellor ordered and decreed, as follows:

1. Defendants' motion to dismiss is overruled.

2. The 5% limitation on annual adjustments to judges' salaries set forth in Section 3 of Chapter 44 of the Public Acts of 1977 and T.C.A. 8–23–103(d) does not violate Article VI, Section 7 of the Tennessee Constitution when applied to judges such as plaintiff who were appointed or elected after April 7, 1977.

3. Chapter 44 of the Public Acts of 1977 and T.C.A. 8–23–103(d) should properly be construed so as to allow the application of the 5% limitation on annual adjustments of judges' salaries only to those judges appointed or elected after April 7, 1977.

4. The application of said 5% limitation on annual adjustments of judges' salaries only to those judges appointed or elected after April 7, 1977, does not deny such judges the equal protection of the laws and is not in violation of Article I, Section 8 of the Tennessee Constitution or of the Fourteenth Amendment of the Constitution of the United States.

5. Plaintiff is now owed the difference between the compensation paid him as an Associate Judge of the Court of Criminal Appeals and the compensation paid to the Associate Judges of said Court who were appointed or elected before April 7, 1977.

6. All relief prayed for in plaintiff's complaint is denied.

7. The costs of this cause are taxed against plaintiff.

The plaintiff by an appropriate statement of issues for review takes exception to each holding of the chancellor, except number (1). The appellees present holding number (1) for review.

## II. Appellees' Preliminary Issue for Review

The defendants-appellees moved to dismiss this cause because it is a lawsuit against the state and is prohibited by T.C.A. § 20–13–102(a), which provides:

> No court in the state shall have any power, jurisdiction, or authority to entertain any suit against the state, or against any officer of the state acting by authority of the state, with a view to reach the state, its treasury, funds, or property, and all such suits shall be dismissed as to the state of such officers, on motion, plea, or demurrer of the law officer of the state, or counsel employed for the state.

The chancellor overruled the motion to dismiss, and the defendants-appellees cite that ruling as error and seek review.

Case law establishes that an official executing an unconstitutional act is not "acting by authority of the state" within the meaning of the statute. In *Lynn v. Polk*, (1881) 76 Tenn. 121, the court stated:

> (a) legislature is the creature of the Constitution and cannot rise above it or go beyond it. The Constitution is its chart and guide and by it the Legislature must be governed and controlled. Whenever the law-making power violates the Constitution, its act is a nullity, and being a nullity, is not an authority of the State.
>
> \* \* \* \* \* \*
>
> A law unconstitutional is void, and confers neither right nor authority.

Also, in *Stockton v. Morris and Pierce*, (1937) 172 Tenn. 197, 110 S.W.2d 480, the court stated:

> (b)y its express terms, the inhibition of the [sovereign immunity] statute has application only when the "officer of the state [is] acting by authority of the State," and, by the great weight of authority *"an officer while executing the unconstitutional act, is not acting by authority of the State."* (Emphasis added)

We, therefore, conclude that this lawsuit attacking the constitutionality of the application of a statute is not barred by the sovereign immunity statute. The chancellor is affirmed in his overruling of the defendants' motion to dismiss.

## III. Is the Statute Unconstitutional On Its Face?

We find the dispositive issues to be (1) is the 5% limitation on the annual salary adjustments as set out in section 3 of chapter 44 of the acts of 1977 unconstitutional on its face; (2) if so, can it be saved by the elision clause of that statute?

We agree with the chancellor that the last sentence of subsection (d), which limits the annual salary adjustments to five percent, applies to all judges of the state. We also hold that, under the facts, that provision, upon its enactment, diminished the compensation of all judges in the state because it mandated a smaller annual salary adjustment than then existed under subsection (c) of T.C.A. § 8–23–103. We further hold that the five percent limitation is, therefore, unconstitutional on its face. Art. 6, section 7, Constitution of Tennessee.

The defendants argue, and the chancellor found, that the statute would be unconstitutional only if applied to those judges who were elected or appointed prior to its enactment; but the statute can be constitutionally applied to those judges who were elected or appointed after the enactment. Judge Cornelius was appointed and elected after the enactment of the statute.

We agree with the plaintiff's argument that to have the statute mean what the defendants insist it means, we would have to rewrite the statute to read, in substance, as follows: "(n)o annual salary adjustment *of judges appointed or elected after the effective date of this act* made as provided in this section shall exceed five per cent (5%)." (Emphasis denotes inserted words).

The plaintiff cites *Ballard v. Mississippi Cotton Oil Co.*, (1903) 81 Miss. 507, 34 So. 533, in support of his argument that the courts can not add words to statutes in order to make the statute as written constitutional in its particular application. There the court stated:

> (w)herever a court, in order to uphold the provision of a statute as constitutional,

has to *interpolate* in such statute provisions *not put there* by the Legislature, in order, by *such interpolation,* to make the provision which the Legislature *did* put there constitutional, *this* is no case of severance, in any proper legal sense; nor is it, in any *legal or logical* sense, a proper *limitation* of the provisions which are in a statute by judicial construction. *Such action by a court is nothing less than judicial legislation pure and simple.*

See also *United States v. Reese,* 92 U.S. 214, 23 L.Ed. 563 (1875); *"Trade Mark Cases",* 100 U.S. 82, 25 L.Ed. 550 (1879); *Griffin v. Breckenridge,* 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971).

Therefore, we will not add words to that sentence of the statute which unconstitutionally limits annual salary adjustments of all judges so as to make it constitutionally applicable only to judges elected or appointed after its effective date.

Looking now to the elision clause of the statute, as that provision applies to that sentence which limits the annual salary adjustments of all judges, we find that the clause provides that:

(i)f any provision of this act or the application thereof to any person or circumstance is held invalid, such invalidity shall not affect other provisions or applications of the act which can be given effect without the invalid provision or application; and, to that end, the provisions of the act are declared to be severable.

Admittedly, we should uphold the general doctrine which requires the courts to save, in so far as constitutionally permissible, legislative enactments. An example of the proper application of that doctrine is found in the case of *Bayless v. Knox County,* (1955) 199 Tenn. 268, 286 S.W.2d 579. There the court had under consideration a private act which purported to increase the salaries of the judges of the General Sessions Court of Knox County. Those judges had been elected to a term ending on August 31, 1950, at a salary of $3,600.00 per annum. Thereafter, in 1947 the legislature passed a private act which purported to increase the salaries of those judges to $4,800.00 per

annum, the act to take effect "from and after the first day of the calendar month next succeeding the approval of this Act." The act was approved on February 7, 1947. The court held the act clearly unconstitutional wherein it increased the compensation of those judges during the term for which they were elected. The court did, however, hold that the illegal provision which made the statute effective during the term could be deleted, and the increase in salary could constitutionally become effective on September 1, 1950, the beginning of the next eight-year judicial term.

The *Bayless* approach and solution is impossible in the present lawsuit. There is no way to delete any part of the sentence which limits the annual salary adjustments to five percent without striking the entire sentence; that sentence must stand or fall as written. Neither can we save that provision by making it applicable only at the beginning of the September 1, 1982 eight-year judicial term because the first sentence of the same statute terminates all annual salary adjustments as of July 1, 1982.

The power of a court to declare a statute partially valid and partially invalid is discussed at 2 Sutherland Statutory Construction, chapter 44 (4th Edition). That study of the problem is supportive of the view herein expressed, and it cites cases heretofore cited as authority for the proposition that words should not be added to a statute in order to make a particular application constitutionally permissible.

### IV. The "Term" v. "Time" Issue

Article 6, section 7 of the state constitution provides that the compensation of judges "shall not be increased or diminished *during the time* for which they are elected." (Emphasis added). The defendants insist that this provision relates to the *time* during which Judge Cornelius was appointed and elected to serve, namely, from October 3, 1978, through August 31, 1982, and that so long as his compensation was not increased or diminished during that *time period* the constitutional prohibition has been satisfied. The chancellor apparently agreed

with the defendants, and held that those words "refer to the 'time' during which an individual judge holds office and not the time period of a judicial term." This holding is supported by the case of *Gaines v. Horrigan,* (1880) 72 Tenn. 608, wherein the court dealt with a statute which changed the compensation of judges during the term, but which provided that the change would affect only those judges "hereafter appointed or elected." The statute now before the court does not have words limiting its application only to those judges appointed or elected after its enactment.

The plaintiff argues that the words "during the time" refer to the judicial term, and cites as authority the case of *Overton County v. State ex rel. Hale,* (Tenn.1979) 588 S.W.2d 282. In *Overton County* the court made the following statement concerning the rationale behind article 6, section 7 of the constitution:

> It is universally recognized that the rationale undergirding such constitutional provisions is the maintenance of judicial independence from legislative action to punish or reward judges for decisions that produce unfavorable reaction. The key words of the Tennessee constitutional provision are "during the time" which obviously means legislative action taken within *the time period of a judicial term of eight years,* to increase or diminish compensation. (Emphasis added).

The plaintiff argues that the chancellor's ruling in the present lawsuit is contra to the above ruling of the supreme court.

We note that the *Overton County* court recognized as unsettled the issue of whether the constitutional prohibition could apply to those judges elected or appointed after the enactment of the questioned legislation. That court expressly refused to rule on that question because it was not confronted with that factual situation. The case at bar does present that factual situation.

However, we deem it unnecessary to rule on that question because, as herein pointed out, we hold that the statute now before the court diminishes the compensation of all judges in the state and is uncon-

stitutional on its face, and it can not be construed so as to apply only to judges elected or appointed after its effective date without adding words thereto, which we refuse to do. Where we find a statute unconstitutional as written or as applied in a particular situation, we deem it appropriate to limit our decision to those grounds and not extend our opinion to other constitutional questions. We, therefore, do not rule on the issue that was not before the *Overton County* court. For the same reasons, we do not rule on the applicability of the Fourteenth Amendment to the federal constitution or article 1, section 8 of the state constitution.

## V.  *Conclusions*

The chancellor erred in holding the second sentence of T.C.A. § 8–23–103(d) constitutional on its face and constitutionally applicable to Judge Cornelius so as to limit his annual salary adjustments to five percent. The judgment of the chancellor is reversed and the second sentence of T.C.A. § 8–23–103(d) is declared void as being in violation of article 6, section 7 of the Constitution of Tennessee. We further hold that Judge Cornelius is entitled to be paid the difference in the salary he has received since his appointment as judge and that salary he would have received had the void statute never been applied to him. This cause is remanded to the chancery court for the fixing of that amount due Judge Cornelius and for judgment accordingly. That judgment, when entered, shall bear interest at the statutory rate from December 30, 1981, the date the chancellor rendered final judgment in this cause, until the date it is paid. The costs in the trial court and in this court are adjudged one-half against each party for which execution may issue, if necessary.

PARROTT, P.J., and SANDERS, J., concur.